Mr. Court, my name is Vadim Glasman and along with Matthew Kralvik we represent Haitao Xiang. This case presents an issue that both the Supreme Court and the circuit have yet to address. It's an issue that affects not only those who may find themselves as targets of criminal investigations or having actually committed a crime, but it's an issue that all individuals in this country that at one point or another may decide to travel internationally are impacted by. There is no dispute here that warrantless border searches are permissible when they relate to the search of physical objects and merchandise, physical goods and merchandise. The main issue in this case is whether the border search exception to the Fourth Amendment extends to forensic searches of digital devices, the most invasive and intrusive kind of search that reveals- I'm having trouble hearing you because you're looking down. Counsel, you can raise that podium there with the button to your right. I apologize, your honors. The forensic digital searches are the most invasive and intrusive kinds of searches that reveal the most intimate details of a person's life. And that's because digital devices contain more private information about a person's life than they have ever before. These most intimate details about our lives can be financial records, confidential business documents, medical records, private emails, everything. They're pretty much micro-universes of our entire worlds. And in this case, Dr. Zhang's laptop and hard drives were seized at O'Hare Airport and were digitally imaged without a warrant. Now with the seismic shift in digital technology, the invasive digital imaging search of them are so much more intrusive than anything that could be done of a physical object, which is what border searches are traditionally of. And here, it doesn't matter if it's at a border or not a border. The privacy interest in these digital devices is extremely great and that's been recognized. We've read what everybody says about how awful this is. Counsel, what do you make of the language from Flores, Montana that the government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border? That there is a high interest of the government that perhaps should be taken into account in the heightened interest of privacy that a potential search person has in their possessions. And that's what Riley speaks to. It does take into account, but it has to be weighed against these privacy interests and whether a person's privacy interest in these digital devices and what's contained on there outweighs or is outweighed by the government's interest in a categorical exemption of a warrant requirement at the border. And since Riley, there's been two courts that have talked about this in the Ninth Circuit, United States v. Canoe, which said, well, in order to do this, because of the privacy interest, there has to be a reasonable suspicion that the device contains actual contraband on there. Not just mere evidence of a crime, but it has to have reasonable suspicion of contraband on it. And the other one is the Fourth Circuit. Well, I must say that the First Circuit's response to that I found totally persuasive. Judge Lynch, not surprisingly, dealt explicitly with that. Or was it Judge, was it the Eleventh Circuit? Are you speaking of United States? Judge, go ahead. You think both of those, you think Al-Assad and what's the Eleventh? There's Toucette and Vergara in the Eleventh also, Your Honor. Pardon? There's United States v. Toucette. Toucette. Toucette. You think they're wrong? I think Toucette was wrong, Your Honor. And they're different than the Ninth and the Fourth. And they are different than the Ninth. You don't want to talk about that. I will talk about Toucette, Your Honor. All right, so you are saying the 2018 policy amendment, revised policy, is unconstitutional, as well as I know you're challenging 2017, which probably applied here. Yes, Your Honor. You're saying both? Yes. I believe when you are talking about digital devices that the privacy is so great in, that Customs and Border Patrol can only act with the powers that are given to them by statute. And they're not given the power to do these forensic searches. The reason that the Eleventh Circuit... How do you define contraband, then? Well, there has to be knowledge that there's contraband. If you go back... Wait, wait, wait. Yeah. Well, it has to be acknowledged there's contraband. How do you define contraband? Contraband... Is carrying trade secrets to China contraband or not, if they're stolen? Your Honor... Answer the question. There has to be knowledge that there's contraband on it, and you can't say because contraband was found on it... That's what they were looking for. They were not looking for... They didn't know what they were looking for. There was no evidence of what was going to be on there. They didn't know if it was going to be a confidential piece of... In St. Louis, I'm talking about. You're saying what they did in St. Louis was unconstitutional. But what they were doing in St. Louis was an extension of what Customs and Border Patrol did because the government's position is that FBI St. Louis was acting as an agent of Customs and Border Patrol on subject matter expertise. But when they seized these items, there was no knowledge about what was going to be found on them. There was no evidence... No knowledge? No, because the evidence suggests... No knowledge? There was no knowledge. They had the collective knowledge of... But even with the collective knowledge, there was nothing suggesting that a trade secret was downward. There was nothing suggesting that a trade secret was going to be on those devices. Pete Quinton was racing out of the country. He had a one-way ticket to visit his parents in China. I mean, you know, I have to laugh at your description of reality or unreality. The fact that he was going out of the country still does not suggest that there was going to be contraband on this, Your Honor, and... It does. To me. Well, when you do the... It would to me. When you do the balancing test suggested by Riley, there has to be a prevalent government  Oh, I know. Okay, Riley. Well, Riley doesn't apply here. Riley applies to the understanding that there's so much privacy on it that there's a heightened standard that has to be thought of when you're doing these... Riley didn't consider the border balancing. And that's why Canoe did, and so did, and I'm going to butcher this name, and I apologize, Ageviken from the Fourth Circuit, where they said there has to be either a nexus to a border purpose... The Supreme Court's got a conflict in how you extend Riley to the border context. And I urge this Court to take Riley and say because of the immense privacy interest, you have to balance it against these government interests to categorically exempt forensic search. And the reason Tussaud or Tussaud was wrong, Your Honor, is because it likened a flash drive to a gas tank in a car. Since Riley, has there been a decision by a circuit court that has done what you're asking us to do? No, there hasn't. What the courts have done is by balancing the privacy, they've come... One of three things has to be met. There has to be a traditional border search, which this wasn't, because when you go back to the first Congress, traditional border searches are done on physical goods, wares, and merchandise, and not private papers. So we know that the contents of a digital device, whether it's a laptop, or a hard drive, or a cell phone, is much more than just a single private paper that the first Congress said shouldn't apply to traditional border searches. So then Canoe says, okay, if you do this balancing test, there has to be reasonable suspicion that there is contraband on these specific devices that are being searched. Here there was none. They had a... What Canoe stands for is Customs and Border Patrol doesn't have the duty of general criminal investigation. They have to do specifically to protect the border, and they can't just be looking for evidence of a crime. It has to be contraband. And whether Monsanto, or the FBI, or Customs and Border Patrol might have been suspicious of Dr. Zhang at that time, there's nothing in the record at the district court level or here saying they knew a trade secret, which is what is required for this to affect the border, to be economic espionage, there has to be a trade secret. There's nothing suggesting that that was ever downloaded at Monsanto by Dr. Zhang, or put on any of the devices. And then the third one is there has to be a nexus to recognize border purpose. And we can't give Customs and Border Patrol carte blanche, unfettered discretion to search everything because they work under the purview of the statute which created them. And that statute of 19 U.S.C., I believe 1595, gives them the power to ask for search warrants. And if they have unfettered power to search whatever they want just because they're at the border, they wouldn't need that power given them specifically by Congress. So they can only act within that, your honors. Now, your client chose to get on the plane, right? After they seized the devices, yes. And if he had said, you can't have my devices and you need a warrant, and they had said fine, you can go, but we're detaining your devices until we get a warrant, you can stay for that process. And he had said, you can't do that and got on the plane. And now what? This is very common of airport searches, airport search law when I was a new judge some years ago. I agree that it's common to seize the physical goods, like the laptop itself or the card drive physical goods, sure. But they had to get a warrant. That's why... Okay, but we had cases, a dog sniffs a bag at the departure area and he says, that's my bag and I'm late for my plane and I'm getting on my plane. And the officers would say, airport officers would say, you can get on the plane but your bag is staying while we get a warrant. You can get on the plane or not. Some people got on the plane, some didn't. But those who got on the plane had no claim. But that didn't happen here. They took us, they didn't say that, they didn't ask for a warrant. No, but he got on the plane. He got on the plane. He didn't insist that they, he didn't stand there and insist that they had to have a warrant. Right. He didn't, but that doesn't take away the privacy issue here that has to be weighed against what they did. This is, searching a laptop or a hard drive is much different than searching a bag. A bag, you're going to just, whatever's in there is in there. All you're, now we're just arguing about whether they could detain the device while they got a warrant or whether they could do a preliminary search and then get a warrant. Either way, he didn't question what they were doing, he got on the plane. I see no, you don't, you don't, you don't pass the Olano hurdles with that. Dr. Zhang's ignorance of what he's allowed to do or not allowed to do under the Constitution doesn't take away the government's need to work within the purview of what they're allowed to do and what the Fourth Amendment allows them to do. That's a good law review article, but it doesn't, isn't this plain error review? This is de novo. If it's right with your honors, I'm wrong. Now, what case says that? I don't know, your honor, off the top of my head. So you just gave the answer that's the only good answer for you. I thought you were talking about the, this case in general. Well, no, I'm talking about this appeal. I don't have the case name on me, but I believe it was a de novo review on the appeal for the Fourth Amendment. Well, yeah, but if an issue's not preserved, it's plain error review. We preserved the issue by filing a motion to suppress saying that the warrantless search was unconstitutional. But if he didn't object, if he just got on the plane, he didn't preserve the issue. It's not his duty to object if the government is doing something unconstitutional. Well, they don't do anything unconstitutional until after he's on the plane, unless you're saying they couldn't even detain the device to get a search warrant. He didn't abandon interest or possessory interest in his device. He did. He got on the plane. But he didn't abandon the interest, his interest to it. He abandoned the interest in making him go get a warrant. Dr. Zhang respectfully disagrees with that, your honor. And if it's okay, I'm going to reserve the rest of my time for rebuttal. Thank you, Mr. Glasman. Mr. Smith. Thank you, Chief Judge Smith, and may it please the court. Jeffrey Smith for the United States. The defendant was convicted on his own guilty plea of conspiring to engage in economic espionage for the benefit of the People's Republic of China in violation of the Economic Espionage Act. As the district court noted, this is a serious national security crime. The plot was interrupted, at least in part, because customs officials had at their disposal a tool that they decided to use. That is the border search doctrine, a tool that has deep roots in Supreme Court case law going back to the founding, and that has roots in this court's case law as well. Under the border search doctrine, as this court has recognized, and as the Supreme Court has recognized, all persons and goods entering and exiting the United States are subject to search. And the vast majority of border search... Has there been any appellate authority to the effect that that extends to electronic searches of devices? Well, yeah, not in this circuit, Your Honor, but there's a wealth of case law from this court's sister circuits specifically addressing electronic devices. And no court has, no circuit court certainly, has, and I'm not even aware of any district court, that has suggested that there's a carve out from the broad authority to search all the way in and out of the country for digital... Could there be an implication from Riley, though, that that should be a consideration? The Riley argument that the defendant raises here has been raised in numerous cases, and it's been rejected repeatedly, including, as Judge Loken, I believe, noted in Al-Assad, but also in Colsus, Wanjiko in the Seventh Circuit, Colsus was in the Fourth Circuit, and even the cases that he cites, such as Cano, rejected the idea that Riley takes electronic data outside of the border search. And there's good reason for that. Riley dealt with the search instead to arrest, and the search instead to arrest serves two particular governmental interests, and those two interests only. How is this search for, of this device, different than anybody else leaving the country with a phone? Was this something routinely done with phones and tablets and laptops leaving the country, or was he singled out for this particular... He was singled out. He was singled out because the customs agents, based on information they received from the FBI, reasonably suspected that he was, in fact, carrying stolen trade secrets. And they conducted a full search, they searched his checked luggage, they searched his carry-on luggage, they interviewed him, and the search of the luggage found six electronic devices, and they then took those, as my colleague says, for an extension of the search to St. Louis, where the agent had subject matter expertise and the ability to conduct a further search. So it is not a search that is conducted of everyone, if that answers your question. It was done in this case because the government had reasonable suspicion. Now, there was discussion earlier about the circuit split between the Eleventh Circuit and the Ninth Circuit, the Fourth Circuit, the First Circuit, et cetera, and the district court, of course, described the case law in all of these circuits, the magistrate's opinion that was adopted by the district court judge, and I'm happy to discuss that if the panel is interested, but I want to note that this circuit split is not implicated in this case. None of the cases in any circuit would result in the defendant prevailing here. Even in Canoe, which we submit is clearly wrongly decided for the reasons described in our brief, and as Judge Loken noted, as explained in Al-Assad, very persuasively, but even under that standard, the government prevails here because Canoe held that the government can conduct a forensic search of an electronic device if it has reasonable suspicion that the device contains contraband. And I believe my colleague did not at all disagree that stolen material is contraband. Stolen trade secrets here were contraband, and the government had reasonable suspicion to believe that Dr. Zhang was, in fact, carrying these items, this contraband, out of the country. There's some discussion of the 2018 policy revision. Do you agree that it was an advanced search at the airport? Yes. So the search in this case occurred before the 2018 policy was put in place, but we would classify this search, the complete search, as an advanced search under the new policy. The term advanced search was implemented in recognition of the Ninth Circuit's holding the distinguishing between what they call forensic searches and non-forensic searches, but also recognizing that there's no agreed upon definition of a forensic search. In fact, in Canoe itself, there was a dispute over whether a part of the search was forensic or not, and the court did not reach that dispute. The government has decided to use its own term, advanced search, and then to define that with specificity, and this search would be an advanced search. I would note it's a much less intrusive search than the search that the Ninth Circuit approved in Cotterman, which they described as the forensic strip search that involved breaking passwords and restoring deleted files and the like. This is basically what the record describes as a cursory keyword search, looking through the documents that were on an SD card, essentially a memory card that can hold potentially hundreds of thousands of documents, looking for particular words that related to Monsanto, like trade secret or confidential. Then we go to St. Louis, and we bring in the agent who's dealt with Monsanto, and he gets a warrant, and then he takes some of the printouts to Monsanto, as I understand it, and they say, yeah, those are trade secrets. Was the motion to suppress focused on what was found in the warrant, the result of the warrant? So, yeah, I want to be clear that I answered your earlier question correctly, that I understood it. No, you gave me the answer I thought was correct. When I say there was an advanced search, I'm including the entire— I'm worried about the warrant search and what relevance it has to the suppression issues. Okay. I found that very blurred in the briefing. Okay. Okay, I think I can clarify that. A portion of the warrant search was done in St. Louis, and that is what we consider to be the advanced search. That was the mirroring and the keyword searches, and then the agent took the six documents that he found— Is that relevant to the suppression motion only as everything else was fruit, or was there something—was there evidence resulting from the St. Louis preliminaries advanced search? Well, there was no trial, so what was introduced— No, where's the suppression motion? There's a record. Yes, sir. I'm talking about the records of the suppression motion. So, what I meant to suggest is that there was no distinction as to whether the government was going to introduce the documents that it found in the initial search or in the warrant search, but the warrant— What was the focus of the motion to suppress? The focus of the motion was basically a fruits—everything is fruits of a preliminary search regardless of what they found on the search? Yes. So, the evidence would have come from the results of the warrant search? Yes, sir. The evidence would primarily have come from the results of the warrant search. The defendant is arguing that that was the fruit of the border search. We don't disagree that it was the fruit of the border search, but we disagree that with their contention that the border search was unlawful. I do want to just quickly get to the reasonable suspicion point. Although we don't concede that it was necessary, it was clearly present here. And I would, you know, note in Oyekin, this court allowed an extremely intrusive search, a strip search and a non-consensual x-ray. And it did so, it noted first that the government had reasonable suspicion that the two travelers were carrying narcotics based on a number of factors. First, the government searched their bags and didn't find the narcotics. That then allowed them reasonable suspicion to look at the next most likely place, which was on their body. And that led to the strip search. And when they didn't find them there, that led to reasonable suspicion to go to the final step, which was the x-ray, which is what found the drugs. Here, the government had ample reason to suspect that the defendant had stolen trade secrets from Monsanto and had done so in electronic form. He had made Google searches, such as company information to the third party, as evidence to accuse me. I don't want it to be an evidence that clearly showed that he had a plan to take information from a company and give it to a third party. And that he was fearing litigation. He sent confidential company information to a personal email account. He sent packets of information to a Chinese competitor. He claimed that he was moving to a job in Illinois, but booked a one-way ticket to China. He appeared visually nervous and blatantly deceptive when confronted with the Google searches. And again, when asked to sign a document saying that he wasn't taking confidential information. The agents were aware that the People's Republic of China, where the defendant was traveling, had a practice of recruiting scientists and providing financial incentives to bring stolen trade secrets. The defendant had previously misrepresented himself as a student when he wasn't, in order to acquire information from a different company. And of course, the reasonable suspicion standard is not a high standard. It deals in probabilities, not hard certainties. Am I wrong that the defendant is arguing, in addition to this issue, is arguing that reasonable suspicion isn't good enough. Riley requires a warrant no matter how much suspicion you have. He is arguing that. Has any circuit court gone there? No. Most recently, I think the Seventh Circuit in Skaggs noted, no court has required more than reasonable suspicion for any border search, including a search of an electronic device, and Skaggs was an electronic device case. And as the lower court noted, this issue has been raised in numerous circuits, the First Circuit, the Fourth Circuit, the Eleventh Circuit, the Ninth Circuit. I'm not sure the lower court discussed the Tenth Circuit and the Fifth Circuit,  no court has ever required more than reasonable suspicion for any border search, including a search of an electronic device. And I would just, if I could quickly make two more points. One, the defendant argues that maybe what the defendant was stealing was confidential information that wasn't a trade secret. That seems rather unlikely. The difference between confidential information that isn't a trade secret and confidential information that is a trade secret is that the latter derives independent economic value from not being widely known. And it's far more likely that somebody crafting this careful scheme would be taking something of value rather than something that had no value. But in any event, reasonable suspicion doesn't require that the government negate all innocent possibilities, and this isn't even an innocent possibility, it's just a different kind of misconduct. And so here we think the reasonable standard is easily, reasonable suspicion standard is easily met, assuming it's required. And this court doesn't need to necessarily decide that, just as the lower court didn't. The last just minor point I would raise is we did not cite in our brief 19 CFR section 122.2. We noted in our brief that, anyway, that provision, which is explicitly authorized by a couple provisions in the U.S. Code, 19 U.S.C. 1644 and 1644A, extends to airplanes the same authorities that government has with regard to ships, and that's just in response to a statement in the reply brief suggesting that the government's authority with regard to people leaving on airplanes is different than people leaving on ships. It's not. I would note this court's two border search cases, Udafot and Oyekin, are both airplane cases. And the court found that a search at the airport of an international traveler, either coming in or going out, falls within the border search authority. So if there are no further questions, I would ask that the court affirm the lower court. Thank you. Thank you, Mr. Smith. Mr. Glasner. Your Honors, I want to clarify the basis for the motion to suppress because it seemed from the government there was a little confusion about it. What happened was these devices were seized at O'Hare. These devices were sent on June 10, 2017. They were sent to St. Louis FBI, who got them on June 13, 2017. They were then imaged, forensically imaged, and searched without a warrant. During that forensic search and imaging is where they found six documents, one of which Monsanto later went to say was a trade secret. That information was then used to get a warrant over a month later to search the devices. So the fruit was actually in the warrantless search that was the extension of the border search. So there was no search in St. Louis? The forensic imaging was done in St. Louis because there are governments claiming that the FBI that was acting as a subject matter expert for CBP who seized them. You just said, no, they just got it in St. Louis and shipped it to? All right. There was no search at the airport? No, there was just a seizure at the airport. And then without looking what's on there, without knowing that they needed subject matter expertise, because the government can't point anywhere on the record that they knew there was going to be something that needed a translator for Mandarin or Cantonese, something that said we know or reasonably suspect is a trade secret. They pointed all these things that caused them what they call reasonable suspicion. But none of it says it's a trade secret. And we can't just guess, well, it's likely it's a trade secret because there's an economic value, so we get to search these devices that have all this privacy on it. They don't know. It was guessing, and it wasn't any kind of reasonable suspicion.  And I think it's important to look at how it was done because FBI was investigating Dr. Zhang, didn't have probable cause to do anything, asked CBP to set an alert for him and seize his items. They then seize it, and instead of giving it to FBI Chicago, who's closer, they send it back to the exact agent who initiated this. This was sidestepping the Fourth Amendment, which goes towards the unreasonableness of what happened here. We're not saying every digital device search at the border needs a warrant. What we're saying is if it's not a traditional border search like here, if there's no reasonable suspicion that there's actual contraband on the devices being searched, if there's no known nexus to a border purpose, and being an instrumentality that could carry evidence like the Fourth Circuit says isn't enough, when those three things aren't met, then they do what traditional law enforcement investigators do at a time like that, and they try to get a warrant. And that's what we're asking this court to do, and to reverse the district court's decision denying the motion to suppress. Thank you, Mr. Glossman. Thank you also, Mr. Smith. The court appreciates the appearance of counsel before us this morning in this argument. We appreciate your help to the court in trying to resolve the issues here. We'll continue to study the materials and render a decision. Thank you.